```
                  UNITED STATES DISTRICT COURT
                       DISTRICT OF VERMONT
```

BRUCE T. GABORIAULT            :
                               :
    v.                         :
                               :        CIVIL NO. 1:05CV91
INTERNATIONAL BUSINESS MACHINES :
CORPORATION and METROPOLITAN   :
LIFE INSURANCE COMPANY         :
_____

<u>RULING ON PENDING MOTIONS</u>
(Papers 24, 26 and 36)

    Plaintiff Bruce Gaboriault seeks payment of long-term disability benefits under a plan subject to the Employment Retirement Income Security Act of 1974 (hereinafter "ERISA"). The plaintiff has moved for summary judgment (Paper 26), and the defendants, plaintiff's employer and insurer, have moved for entry of judgment on the administrative record (Papers 24 and 36).  For the reasons set forth below, the plaintiff's Motion for Summary Judgment is DENIED, and the defendants' Motions for Judgment on the Administrative Record are GRANTED.

I. Standard of Review

    Although it sometimes is appropriate to treat a motion for entry of judgment on the administrative record as one pursuant to Fed. R. Civ. P. 56, such motions "can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact."  <u>Muller v. First Unum Life Ins. Co.</u>, 341 F.3d 119, 124 (2d Cir. 2003). Ordinarily when reviewing

1

an ERISA plan eligibility determination, "the district court is limited to a review of the evidence in the administrative record absent good cause to consider additional evidence." Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 134-35 (2d Cir. 2001); accord Krizek v. Cigna Group Ins., 345 F.3d 91, 97 (2d Cir. 2003) (a demonstrable conflict of interest may constitute "good cause" to consider additional evidence).

In this case, the ERISA plan confers "discretionary authority" on the plan administrators "to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." See Administrative Record (Paper 23) at 38. Where a plan grants the plan fiduciary such discretionary authority, the Court is required to limit its review of a denial of benefits to the administrative record, and determine whether the denial was "arbitrary and capricious." See, e.g., Miller v. United Welfare Fund, 72 F.3d 1066, 1070-71 (2d Cir. 1995); Todd v. Aetna Health Plans, 31 Fed. Appx. 13, 14 (2d Cir. 2002) (affirming administrator's denial of long-term disability benefits where the decision did not fall "so far outside the range of its discretion as to constitute arbitrary and capricious decisionmaking [sic] that was 'without reason, unsupported by substantial evidence or erroneous as a matter of law'.")(citation omitted).

II. Background

The Administrative Record reveals the following.  At all relevant times, plaintiff Bruce T. Gaboriault was employed by defendant International Business Machines, Inc. (hereinafter "IBM").  See Paper 23 at 100 (plaintiff was "hired as a Senior Production Specialist in 1981 . . . ").  As an IBM employee, the plaintiff was eligible for long-term disability benefits through a policy covered by ERISA (hereinafter "the Plan") and underwritten and administered by defendant Metropolitan Life Insurance Co. (hereinafter "MetLife").

In October 2000, the plaintiff sustained an injury to his lower back at work.  He returned for a period, but as of this date he has not been back to work since April 22, 2001.  See Paper 23 at 71, 120.

Thereafter, the plaintiff received short-term disability payments from IBM, until December 12, 2001, for depression, anxiety and back pain, when those benefits expired under the applicable policy terms.  See Paper 23 at 71.  He immediately applied for long-term disability benefits under the MetLife policy, citing his continued inability to work because of back problems, anxiety disorder, and panic attacks.  See Paper 23 at 62, 166-67.

The Plan describes "Totally Disabled" as "mean[ing] that during the first 12 months after you complete the waiting period,

you cannot perform the important duties of your regular occupation with IBM because of a sickness or injury."  After the expiration of the initial 12-month waiting period, "totally disabled means that, because of a sickness or injury, you cannot perform the important duties of your occupation or of any other gainful occupation for which you are reasonably fit by your education, training or experience."  In either case, it is the claimant's obligation to submit proof of disability.  The Plan further provides: "At your own expense, proof of disability, satisfactory to Metropolitan, must be submitted to Metropolitan."  See generally Paper 23 at 19.

    In his December 12, 2001 Application for Long Term Disability Benefits, the plaintiff identified Dr. James Evans as the physician who had treated him since the onset of his disability.  See Paper 23 at 167.  By letters dated December 12, 2001, and December 21, 2001, MetLife informed the plaintiff that the company had yet to receive "your attending physician's portion of the LTD [long-term disability] application."  See Paper 23 at 119, 121.  Specifically, in its January 23, 2002 correspondence, MetLife explained to the plaintiff:

> We recently received a medical statement from Steve Nasuta, PsyD.  To date, we have received no medical information from your attending physician, Dr. James Evans.
>
> If it is your intent, by submission of medical information, to request a review of your claim, you must follow the review procedures as they were outlined

> to you in our letter of December 21, 2001.  Your
> request should be done in writing and should state the
> reasons your claim was improperly terminated in
> addition to the submission of new medical data in
> support of your disability.
>
> If we do not hear from you in this regard within thirty
> days from the date of this letter, we will assume you
> do not wish to pursue this matter.

Paper 23 at 117.

In February 2002, Metlife received some information from Dr. Evans.  While these records indicated the plaintiff suffered from "anxiety disorder," they were unaccompanied by a treatment plan or even a definitive statement that plaintiff was unable to work.  See Paper 23 at 113-14.  On February 27, 2002, MetLife telephoned the plaintiff, and specifically explained to him that, despite repeated requests, the company had insufficient information and that his claim would be denied absent his securing additional support.  See Paper 23 at 52 (company diary report indicating plaintiff stated "he does not feel his doctors will be forthcoming with any more information" and its representative's response that "I will have to disallow benefits")(capitalization omitted).

Thereafter, MetLife asked independent physician and consultant, Dr. Ernest Gosline, a board certified psychiatrist, to review the plaintiff's records and render his opinion on whether the plaintiff was "totally disabled" as defined under the

5

Plan.  See Paper 23 at 105-06.  Upon review of the information which the plaintiff submitted, Dr. Gosline concluded:

> In view of the limits of information that we have on this case, I would be of the opinion that we have inadequate medical documentation to preclude this claimant from employment at his own job.  The possibility of a telephone conference with his treatment psychologist may be necessary if the additional information is not provided.  I would recommend that we send the second request for information over and beyond the functional behavioral assessment form such as a PPE and the nervous and mental behavioral assessment form which includes DSM-IV and also includes a functional assessment as well as prognosis.

Paper 23 at 106.

Based on Dr. Gosline's review, on March 13, 2002, MetLife denied plaintiff's claim.  See Paper 23 at 100-01.  That letter, in part, noted:

> Office notes received from your attending physician, Dr. James Evans, indicated that you suffer from depression, anxiety, and back pain.  However, no objective medical information was submitted on your behalf.  In addition to this information, we were also provided with a letter, dated January 8, 2002, from your psychologist, Dr. Steven Nasuta.
>
> To assist us in making a determination regarding your claim, the medical information submitted by your physicians was reviewed by our physician consultant, Dr. Ernest Gosline, who is board certified in Psychiatry.
>
> Upon review of the medical information in your file, Dr. Gosline has indicated his opinion that no objective medical evidence was provided to support your inability to perform the duties of your own job.
>
> In summary, the medical information on file does not support a condition severe enough to keep you from performing your job at IBM.  Therefore, we have

>determined that you do not meet the definition of disability as defined in the Group Plan and we must disallow your claim for Long Term Disability benefits.

Paper 23 at 101.

On May 22, 2002, the plaintiff wrote MetLife a letter appealing the decision. The plaintiff also indicated "Dr. Gosline [should] feel free to contact [him] and/or any of [his] doctors for any needed further medical information." Paper 23 at 93.

In support of his appeal, the plaintiff enclosed a pro forma note which stated: "We checked with Dr. Evans in regards to your request of a letter from him regarding your inability to return to work because of your medical condition. In looking at your chart, Dr. Evans feels all the information which we have sent in the past should be sufficient and there is not a need for him to write a letter." Paper 23 at 94. Dr. Nasuta submitted an additional letter on plaintiff's behalf dated May 5, 2002, in which, in part, he indicated that he and Dr. Evans both agree "Mr. Gaboriault would not be able to return to work due to his multiple physical and psychiatric problems, and that disability status was appropriate." Paper 23 at 97.

Based upon plaintiff's appeal and submission of the additional note and letter, MetLife sought to have plaintiff's file reviewed by another independent consultant, Mark Schroeder, M.D., Diplomate of the American Board of Psychiatry and

Neurology.  <u>See</u> <u>generally</u> Paper 23 at 87-91 (Dr. Schroeder's report).  In a comprehensive summary, Dr. Schroeder concluded:

> I believe that the medical documentation on file does not support impairment and the claimant's inability to function in his own occupation from April 3, 2001 to the present.  The letters from Dr. Nasuta are very brief treatment summaries essentially no more than diagnoses listed.  No detailed office visit notes or specific objective evidence for these diagnoses are given.  It is of concern that Dr. Nasuta had stated "there is evidence for a personality disorder, but that this has not been evaluated or assessed".  Dr. Nasuta does not indicate in his letters any plans for any return to work or rehabilitation plan.  Dr. Nasuta does not present any consideration that the employee may be exaggerating symptoms.
>
> The office notes of Dr. Evans report depression and anxiety, but do not provide objective evidence of why Dr. Evans has come to this conclusion.  There is also no indication of what experience Dr. Evans, a family practitioner, has in assessing and treating mental illness.  It is of concern in Dr. Evans' note that an excessive use of alcohol is implied.  No evidence of further evaluation or possible treatment of this condition is noted in Dr. Evans' notes or in Dr. Nasuta's notes.  Notes from the Green Mountain Physical and Occupational Medicine mention depression and anxiety in some office notes, but do not provide objective clinical information as to how these diagnoses were reached or provide any significant supporting evidence.  Psychological testing performed at the Green Mountain Physical and Occupational Medicine indicates a perceived tendency of the employee to be pessimistic and somatize emotional distress.
>
> Additional information that would provide more information that would be relevant to the determination of possible psychiatric ability or impairment would be the following: Full office visit notes from Dr. Nasuta; presentation of more objective clinical evidence such as a formal mental status exam or psychological testing, that supported the diagnoses given in the record; a plan for return to work or rehabilitation; and further evaluation of the mentioned personality disorder and the mentioned possible alcohol overuse;

>and the consideration that other factors, such the
>employee's documented wish to receive disability
>retirement may play into the excusal from work.

Paper 23 at 90-91.

Based on this additional review, by a letter dated July 31, 2002, MetLife again denied the plaintiff's application.  See Paper 23 at 70-74.  In relevant part, MetLife again explained:

>A letter was received from Dr. Steve Nasuta,
>Psychologist, which stated that you were referred to
>him by your primary care physician for psychotherapy
>and treatment for ongoing symptoms or [sic] depression,
>anxiety and problems associated with chronic pain
>syndrome.  Dr. Nasuta reported that you were initially
>seen on June 25, 2001.  Dr. Nasuta diagnosed you with
>depression, anxiety and underlying dysthymic disorder.
>Dr. Nasuta reported that your global functioning
>assessment was forty-five to fifty.
>
>On May 24, 2002 our office received your appeal letter.
>On May 16, 2002 we received a letter dated May 5, 2002
>from Dr. Steve Nasuta.  The letter from Dr. Nasuta
>stated that you exhibit a broad range of symptoms
>consistent with major depression, underlying dysthymia,
>generalized anxiety, panic attacks with agoraphobia and
>post traumatic stress disorder.  Dr. Nasuta reported
>that your dosage of anti-anxiety medication was
>increased by your primary care physician Dr. James
>Evans to help in the management of more frequent and
>more intense panic episodes.  Dr. Nasuta stated that it
>was his opinion that you were not capable of returning
>to the workplace.
>
>To assist us with our review of your claim, an
>independent physician consultant board certified in
>psychiatry reviewed your claim on July 23, 2002.  The
>consultant stated that Dr. Nasuta['s] letters were very
>brief treatment summaries with essentially no more than
>diagnoses listed.  The consultant stated that Dr.
>Nasuta did not provide specific clinical evidence for
>the diagnoses that were listed.  The consultant
>reported that there was no indication of what
>experience Dr. James Evans, family practitioner, had in
>assessing and treating your mental illness.  The

> consultant stated that full office notes from Dr. Nasuta, presentation of more clinical evidence such as a formal mental status exam or psychological testing that would support your diagnoses were not provided. The consultant stated that there was no plan for you to return to work or rehabilitation. Also, the consultant stated that a further evaluation of your mentioned personality disorder was not provided to our office.
>
> Based on our review of the information provided, we have not been provided with medical documentation to substantiate a disability as defined by your employer's plan. Therefore, the original claim determination was appropriate.

Paper 23 at 72-73.

### III. Discussion

#### A.

As a threshold matter, MetLife argues Mr. Gaboriault's claims are subject to dismissal because this suit is untimely. See MetLife's Mem. of Law in Support of Mot. for J. on the Administrative Record (Paper 25). According to the Plan, "[n]o legal action may be started [to obtain benefits] more than two years after the time proof must be given." Paper 23 at 31. The Plan further states: "In no case should this proof [in support of a claim of disability] be provided any later than 12 months after the date you would be entitled to receive Long-Term Disability benefits." Paper 23 at 28.

According to MetLife, the plaintiff first asserted his entitlement to benefits on December 12, 2001, the date of his application for benefits. This claim was initially denied on March 13, 2002, a denial which was upheld on administrative

review on July 31, 2002.  See Def's Mem. of Law (Paper 38) at 2. MetLife further argues that on March 1, 2005, it "responded to Gaboriault's counsel by providing the requested claim file, but advising him that the decision to deny benefits had already been upheld on administrative appeal in July 2002 and that no further review of his claim will be performed."  Paper 25 at 6 (quotations omitted).  This action seeking recovery of long-term disability benefits was commenced on or about April 8, 2005; therefore, it is untimely under the clear two-year time limitation set forth in the Plan.  See Paper 38 at 2.

   Because ERISA does not contain a statute of limitations for suits to recover benefits, courts often apply an analogous state law limitations period.  See Lang v. Aetna Life Ins. Co., 196 F.3d 1102, 1104 (10th Cir. 1999).  However, under ERISA, the Plan's provisions are "an employee's primary source of information."  Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 764 (2d Cir. 2002) (citations and quotations omitted).  Accordingly, contractual limitations periods which are shorter than those established under state law are enforceable in ERISA suits so long as they are reasonable.  See Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 874-75 (7th Cir. 1997); Koert v. GE Group Life Ins. Co., 416 F. Supp. 2d 319, 322-23 (E.D. Pa. 2005).  Absent any persuasive argument that the two-year limitation period set forth in the Plan is unreasonable, the

Court finds it enforceable.  See Northlake Reg'l Med. Center v. Waffle House Sys. Employee Benefit Plan, 160 F.3d 1301, 1304 (11th Cir. 1998) (upholding a plan's 90-day limitation period); Patterson-Priori v. Unum Life Ins. Co., 846 F. Supp. 1102, 1105-06 (E.D.N.Y. 1994) (upholding a contractual three-year limitation period).

Despite the contractually-defined untimeliness of this suit, the plaintiff maintains "MetLife's limitation of action should be tolled during the period that it concealed relevant facts from Mr. Gaboriault, namely it concealed its paid medical consultants' reports in which they recommended obtaining medical evidence that would support Mr. Gaboriault's claim and it concealed its failure to follow those recommendations and obtain that evidence."  Pl.'s Resp. to Defs' Mot. (Paper 29) at 1.

Generally, ERISA regulates the way plans must process benefit claims.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 830 (2003).  Employers and plan administrators have a duty to provide participants with complete and accurate information relating to their benefits.  See generally Estate of Becker v. Eastman Kodak Co., 120 F.3d 5, 7-8 (2d Cir. 1997).

Under ERISA, a plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits . . . has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the

12

participant." 29 U.S.C. § 1133(1). A plan must also provide an opportunity "for a full and fair review" of any adverse decision. 29 U.S.C. § 1133(2).

The plaintiff essentially argues the defendant concealed the reason for its denial of benefits. The administrative record does not support this claim; MetLife repeatedly identified the plaintiff's lack of sufficient documentation for his alleged conditions. Cf. Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 69 (2d Cir. 1995) (claim of fraudulent concealment sufficient to toll limitation period is predicated on the defendant deliberately misleading the plaintiffs about a matter which he could have discovered with the exercise of due diligence); Alcorn v. Raytheon Co., 175 F. Supp. 2d 117, 123-24 (D. Mass. 2001) ("An assertion that conduct of the defendant that is consistent with the terms of the Plan regarding investigation and processing of claims was a subterfuge, fraudulently adopted to make the contractual three-year limitation period apply rather than a six-year provision in a state statute, is not enough to defeat the contractual limitation defense.").

The plaintiff also argues he is entitled to toll the Plan's limitations period because he was unaware that MetLife had hired Dr. Gosline to review his claim. See Pl.'s Resp. to Def.'s Mot. (Paper 29) at 3. MetLife's correspondence to the plaintiff does not support this claim either. In the alternative, it is

difficult to see how Dr. Gosline's review misled the plaintiff when MetLife repeatedly and consistently told him that the reason his claim for benefits was denied was due to a lack of persuasive and credible documentation of his disability and inability to work.  See Cohen, 68 F.3d at 69 ("there is nothing in the record that would lead us to conclude that the Union misled him in any way.").

### B.

In his Motion for Summary Judgment, the plaintiff asks the Court to reverse MetLife's decision to deny him long-term disability benefits.  See Pl.'s Mem. (Paper 27) at 19.  In response, the defendants argue the applicable standard of review is highly deferential and the denial of the plaintiff's claim was neither arbitrary nor capricious.  See Paper 38 at 3.  Even if the plaintiff's suit was not barred as untimely under the Plan's provisions, MetLife's denial of benefits is not subject to reversal by the Court.

This Court can disturb MetLife's determination only if it is "arbitrary and capricious."  Zervos v. Verizon New York, Inc., 277 F.3d 635, 646 (2d Cir. 2002).  "A decision is 'arbitrary and capricious' [if it] is without reason, unsupported by substantial evidence or erroneous as a matter of law."  Id. (citations and quotations omitted).

As the Second Circuit has explained:

14

> We follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record. Because district courts are required to limit their review to the administrative record, it follows that, if upon review a district court concludes that the Trustee's decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a "useless formality." . . . This rule is consistent with the fact that nothing "in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators" and with the ERISA "goal of prompt resolution of claims by the fiduciary."

Miller, 72 F.3d at 1071 (citations omitted).

Thus "plan administrators are not obliged to accord special deference to the opinions of treating physicians." Black & Decker Disability Plan, 538 U.S. at 825. Furthermore, ERISA does not "impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." Id. at 831. "Where it is necessary for a reviewing court to choose between two competing yet reasonable interpretations of a pension plan, this Court must accept that offered by the administrators." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443 (2d Cir. 1995).

In this case, the record is unequivocal. MetLife examined all evidence the plaintiff tendered on several occasions. Despite repeated requests, the plaintiff did not find treating physicians to provide sufficient evidence of his inability to function at his regular occupation. Instead, he chose to rely

15

upon conclusory and unsubstantiated physician statements.  To the extent the plaintiff asserts MetLife did not "fully" consider his condition, it is his own fault for failing to provide the proof of long-term inability to work which the company reasonably requested under the terms of the Plan.

The plaintiff's Motion for Summary Judgment (Paper 26) is DENIED.  The defendants' Motions for Judgment on the Administrative Record (Papers 24 and 36) are GRANTED.

SO ORDERED.

Dated at Brattleboro, Vermont, this 13th day of November, 2006.

                                        /s/ J. Garvan Murtha
                                        J. Garvan Murtha
                                        United States District Judge